THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 13, 2018



G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Jesse J. Gospodarek andCase No. 13-34003-GMH
Valerie A. Gospodarek,

Debtors.Chapter 13

**DECISION AND ORDER**

The debtors move to modify their confirmed chapter 13 plan to eliminate an obligation to pay unsecured creditors part of their tax refunds. The trustee objects.

I

A

The debtors' original plan did not provide for a specific dividend to unsecured creditors but states that the debtors will "turn over to the Trustee 50% of all net federal and state income tax refunds received during the term of the plan." CM-ECF Doc. No. 2. An April 4, 2014 order confirming the plan requires the debtors to "pay into the plan one-half of the net tax refund received from state and federal income tax returns as an

additional source of income for the benefit of creditors with allowed unsecured claims." CM-ECF Doc. No. 20, at 2. The order also requires the debtors to provide the trustee with copies of their annual tax returns. *Id.*

In 2016, the debtors moved to modify the plan because they had failed to pay half their refunds to the trustee. They proposed a modification that required them to pay unsecured creditors a dividend equal to one-half the tax refunds they actually received in 2014 and 2015. CM-ECF Doc. No. 28. Specifically, they requested that the plan be modified to provide:

> a) One-half (1/2) of the net tax refunds for tax year 2014 in the amount of $2,940.50 shall be paid through the Chapter 13 Plan.
>
> b) One-half (1/2) of the net tax refunds for tax year 2015 in the amount of $3,361 shall be paid through the Chapter 13 Plan.

*Id.* at 3. The debtors' stated reason was "to provide for payment of tax funds required to be paid to the Chapter 13 Trustee and maintain plan feasibility." *Id.* No one objected.

A September 1, 2016 order allowed this proposed modification. It states, "The modified plan projects unsecured claims will receive: [n]ot less than $6,301.50." CM-ECF Doc. No. 31. The order also provides that the "[a]mount paid to the general unsecured creditors represents the missing tax refunds from 2014 and 2015." *Id.* And it states, "All other terms and conditions of the previous Order Confirming Plan remain in full force and effect." *Id.* So, the debtors' modified plan required them to make up the missed 2014 and 2015 refunds and obligated them to pay one-half of their future tax refunds to the trustee for disbursement to unsecured creditors.

B

On May 1, 2018, the trustee moved to dismiss the case because the debtors had failed to make plan payments, failed to provide the trustee with copies of their 2016 and 2017 income tax returns, and again failed to pay the trustee one-half of their tax refunds. CM-ECF Doc. No. 85. The debtors objected. CM-ECF Doc. No. 89. They stated that they

"intend to shorten their case through an amended chapter 13 plan and believe they may have already paid enough in periodic payments to cover what they owed the chapter 13 plan for 2016 income tax refunds." *Id.* at 1.

On June 5, 2018, the court held a hearing on the trustee's motion. At the hearing, debtors' counsel reported that the debtors would accept the trustee's proposal that the case could proceed if the debtors paid one-half of their 2016 and 2017 tax refunds to the trustee or filed an amended plan to account for those refunds. The court directed debtors' counsel to submit a proposed order to give effect to the terms on which the trustee had agreed to forego dismissal.\*  The order debtors' counsel submitted embodies what the trustee's counsel said at the hearing in terms commonly proposed by the trustee: "The debtors must pay to the Trustee 2016 and 2017 income tax refunds or file a modified plan to account for the refunds due on or before July 6, 2018." CM-ECF Doc. No. 91, at 1. The court signed and entered the proposed order without modification soon after its submission. CM-ECF Doc. No. 92.

C

On July 6, 2018, the debtors filed a request to modify their plan. CM-ECF Doc. No. 96. The proposed modification purports to limit unsecured creditors to the dividend added by the previous modification and use the 2016 and 2017 tax refunds to shorten the plan. The proposed modification states:

   a. Anytime the plan reaches 36 months, the plan shall complete once unsecured creditors receive $6,301.50. If the plan duration actually becomes 36 months or less, then the unsecured claims shall be paid all remaining available funds through month 36 up to 100%.

---

\* The trustee's counsel balked at drafting and filing a proposed order because the debtors had not accepted the trustee's compromise offer sooner. Debtors' counsel then agreed to draft and file the proposed order. While in this instance the proposed order included language often used by the trustee, the current contest about the order's meaning might give the trustee pause about declining future invitations to draft proposed orders.

      b.   The Debtors' 2016 and 2017 tax refunds will be used to shorten the plan.

*Id.* at 2.

The trustee contends that this plan is not proposed in good faith because (1) it does not modify the plan in the manner required by the order, and (2) it is inconsistent with the agreement that led to the order. CM-ECF Doc. No. 105; see 11 U.S.C. §1329(b)(1) ("Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.") & §1325(a)(3) ("[T]he court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law . . . .").

The court held a hearing on the debtors' request to modify on August 7, 2018. At the hearing, the debtors argued that the court's order requires them only to file a modified plan that accounts for the tax refunds. The proposed modification, they say, "accounts for the refunds" by using those refunds to shorten the plan term. The debtors do not otherwise attempt to justify their proposed modification.

II

The meaning of this court's order is a question left to the court's discretion. See, e.g., *Enodis Corp. v. Emp'rs Ins. of Wausau (In re Consol. Indus. Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004); *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 130 (7th Cir. 1987). The use of the phrase "account for" in the type of order under consideration is common. Before November 2017, the chapter 13 trustees in this district commonly insisted that below-median-income debtors contribute one-half of their tax refunds to the plan to pay unsecured creditors. This was done to avoid addressing tax refunds and withholdings in calculating the debtors' disposable income. Debtors frequently failed to pay one-half of their refunds to the trustees, and the trustees would move to dismiss those cases.

Debtors and the chapter 13 trustees often compromised the trustees' motions to

dismiss on common terms: the debtors would agree either to pay the trustee the full refund amount by a court-ordered deadline or modify the plan by that deadline to pay the same amount into the plan over the remainder of the plan term. The resulting stipulations and orders provided that the debtor would modify the plan "to account for" the unremitted refunds. The terms and intent of the deal are obvious: the trustee agrees to forego dismissal in exchange for the debtor's agreement to catch up the refund amount either by making up the missed payment directly or paying that amount through increased plan installments. In either case, the plan pays unsecured creditors the same amount.

The debtors' reading of the court's order changes the deal: the debtors propose to "account for" the unremitted 2016 and 2017 tax refunds by using the 2016 and 2017 refunds to pay the dividend amount previously added to the plan to account for the debtors' failure to pay in one-half of their 2014 and 2015 tax refunds. The plan, as modified in 2016, still requires the debtors to pay one-half of future refunds, which includes the 2016 and 2017 refunds. The effect of the debtors' pending modification request is to deprive unsecured creditors of the promised one-half refunds from 2016 and 2017, since the proposed modification uses those funds to pay the dividend added to the plan when the debtors failed to remit one-half of their 2014 and 2015 refunds.

I conclude that the June 11, 2018 order's requirement that the debtors file a plan modification to "account for" one-half of their 2016 and 2017 tax refunds requires them to modify the plan to pay the unremitted 2016 and 2017 refund amounts into the plan so that unsecured creditors will receive an amount equal to one-half those refunds, plus the $6,301.50 provided for by the 2016 plan modification to account for one-half of the 2014 and 2015 tax refunds. See *In re Xonics*, 813 F.2d at 130 ("Court orders should be read, when possible, to preserve the essential character of a dispute."). Because the debtors' proposed plan modification does not do that, it does not comply with the order. Therefore, the proposed modification does not comply with §1325(a)(3) and

cannot be given effect per §1329(b). See *In re Young*, 370 B.R. 799, 803–04 (Bankr. E.D. Wis. 2007).

III

The trustee's objection to the debtors' proposed plan modification, CM-ECF Doc. No. 105, is sustained. The debtors must file and serve on all creditors a new proposed modification on or before August 24, 2018. If the debtors do not comply with this directive, the court may dismiss this case upon the trustee's filing of an affidavit of non-compliance with this order and a proposed dismissal order.

#####